**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sentinel Insurance Company Limited, | No. CV-22-00289-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Head to Toe Therapy Incorporated, et al., | |
| Defendants. | |

Plaintiff Sentinel Insurance Company, Ltd. brought this interpleader action to have the Court resolve disputed claims to the proceeds of an insurance policy issued by Plaintiff to Head to Toe Therapy, Inc. ("HTT"), Policy No. 59 SBA BC2122 SC ("Policy"). The proceeds, $779,999.96, represent the amount due under the Policy for fire loss that occurred at HTT's business personal property on February 25, 2021. Defendants Sunflower Bank, N.A. ("SBNA") and Jazi Kat LLC ("Jazi Kat") claim respective interests in the disputed funds.[1] On March 14, 2023, the Court granted Plaintiff's unopposed motion to deposit the funds into the Registry of the Court. (Doc. 90.) Then, on April 3, 2023, the Court granted Plaintiff's motion for discharge of further liability and dismissed Plaintiff with prejudice

---

[1] Jazi Kat's counsel is also representing Defendants HTT, Bridget O' Brien ("O' Brien"), and Jazi Kat 4649 Rockridge LLC ("Jazi Kat 4659"). At a telephonic oral argument on March 28, 2023, Jazi Kat's counsel indicated to the Court that both HTT and Jazi Kat are making claims to the disputed funds. (Doc. 99 at 3–4.) However, counsel's pending motion only argues that Jazi Kat is entitled to the funds. (Docs. 109-1, 109-2.) Given there are no arguments before the Court that HTT, Jazi Kat 4649, or O'Brien are entitled to the funds, this order will address only the dispute between SBNA and Jazi Kat.

from the case. (Doc. 95.)

Pending before the Court are SBNA's and Jazi Kat's cross motions for summary judgment, which are fully briefed.[2] (Docs. 91, 101, 109-1, 109-2, 110, 111.) For the following reasons, the Court grants SBNA's motion for summary judgment and denies Jazi Kat's motion.[3]

## I. BACKGROUND

Bridget O'Brien was the sole shareholder of HTT. (Doc. 91–1 at 5.) In October 2019, O'Brien sold and transferred all HTT shares to Vickie Simpson. (*Id.* at 10–24.) To fund this sale, HTT obtained a $3,000,000 loan from SBNA. (*Id.* at 3, 12–18.) On October 31, 2019, HTT and SBNA executed a Business Loan Agreement, a Promissory Note, and a Commercial Security Agreement. (*Id.* at 12–32.) Under the Security Agreement, HTT granted SBNA a security interest in all of HTT's assets, including "[a]ll inventory, equipment, accounts . . . , all insurance refunds relating to the foregoing property . . . whether now existing or hereafter arising . . . and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property." (*Id.* at 3, 24.) The Security Agreement further clarified that SBNA's security interest in the HTT's "collateral" includes "all insurance proceeds and refunds of insurance premiums." (*Id.*)

Both the Security Agreement and the Loan Agreement affirmed that SBNA had a lien priority over HTT's collateral. The Security Agreement provided that HTT "holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement." (*Id.* at 26.) And the Loan Agreement stated that

---

[2] Jazi Kat's motion for summary judgment (Doc. 109-1) is untimely since it was filed after the Court-ordered deadline for dispositive motions and without leave to do so. Generally, the Court will strike untimely motions; however, the Court declines to do so in this instance for three reasons. First, Jazi Kat's arguments for why the Court should deny SBNA's motion for summary judgment are substantively the same arguments for why the Court should grant summary judgment in Jazi Kat's favor. Second, even if Jazi Kat had not moved for summary judgment, the Court could grant summary judgment *sua sponte*. *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 654–55 (9th Cir. 2016). Third, Defendant SBNA was afforded two replies to Jazi Kat's motion (*see* Docs. 110, 111) and is not prejudiced by the Court declining to strike Jazi Kat's motion.

[3] Oral argument is denied because the issues are adequately briefed, and oral argument will not assist the Court in reaching its decision. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

HTT "has not entered into or granted any Security Agreements or permitted the filing or attachment or any Security interests on or affecting any of the Collateral directly or indirectly . . . that would be prior or that may in any way be superior to [SBNA's] Security Interests and rights in and to such Collateral." (*Id.* at 13.) To perfect its security interest in HTT's collateral, SBNA filed a Uniform Commercial Code ("UCC") Financing Statement with the Arizona Secretary of State on November 7, 2019. (*Id.* at 34.) The Financing Statement listed the same collateral as listed in HTT and SBNA's Security Agreement. (*Id.*)

HTT is the named insured under the Policy at issue here. (*Id.* at 8.) Before SBNA's loan funded to HTT, the Policy listed Jazi Kat and First Fidelity Bank as "Loss Payees" and Western State Bank under the "Lender's Loss Payable" endorsement. (*Id.*) As part of the Loan Agreement with SBNA, however, HTT was required to provide insurance coverage on its collateral and to name SBNA under the "Lender Loss Payable" endorsement on the Policy. (Doc. 91-1 at 42.) Insurance coverage had to be in place by the loan closing date of October 31, 2019. (*Id.*) In anticipation of the loan's closing date, HTT's accountant emailed Summit Insurance Advisors (an entity-agent of Plaintiff) on October 28, 2019, requesting Summit name SBNA as the lender loss payee for HTT's Business Personal Property and issue a certificate of insurance reflecting this change to the Policy. (*Id.* at 8; Doc. 91-2 at 32–35.) Summit internally approved this request and, on October 29, 2019, emailed HTT an ACORD Certificate of Liability Insurance, designating SBNA as the "Certificate Holder," "Additional Insured," and "Lender Loss Payee" on the Policy. (*Id.* at 32–35, 38.)

Despite approving HTT's request that SBNA be designated as the lender loss payee on the Policy and despite issuing a certificate of insurance reflecting this, Summit discovered in 2021 that the Policy had not been officially changed back in October 2019. (*Id.* at 45.) In a deposition, a Summit representative testified that HTT's Policy should have been changed in October 2019 to identify SBNA as the lender loss payee. (*Id.* at 44–45.) However, Summit discovered in April 2021 that its employee had failed to make the

appropriate change back in October 2019. (*Id.*) As a result, Summit enacted "a policy change to reflect what should have been done back in October of 2019." (*Id.* at 45.) The April 2021 policy change replaced Western State Bank with SBNA under the "Lender's Loss Payable" endorsement. (*Id.* at 29.) The change also deleted First Fidelity Bank as a loss payee.[4] (*Id.*) This change did not, however, alter Jazi Kat's listing as a "loss payee" under the Policy. (*Id.*)

HTT ultimately defaulted on its loan with SBNA, resulting in SBNA initiating a collection action in the Maricopa County Superior Court. (*Id.* at 5–6.) On March 15, 2022, the court entered judgement in SBNA's favor in the principal amount of $3,444,588.14 plus interest accruing thereon. (*Id.*)

On February 25, 2021, fire loss occurred at HTT's business personal property. (Doc. 6 at 4.) Plaintiff acknowledged coverage for the fire damage under the Policy. (Doc. 6.) After adjusting HTT's claim under the Policy for the fire loss, Plaintiff filed this interpleader action under 28 U.S.C. § 1335 and Federal Rule of Civil Procedure 22. (*Id.*) Plaintiff asserted that the defendants, including SBNA and Jazi Kat, have conflicting claims to the $779,999.96 in insurance proceeds. (*Id.*; Doc. 79 at 2.) On April 10, 2023, Plaintiff deposited the disputed funds into the Court's registry. (Doc. 98.) Although this interpleader names numerous defendants, only SBNA and Jazi Kat have submitted competing claims to this Court. (*See* Docs. 91, 109-1.) SBNA contends that it is entitled to the funds because both Plaintiff and HTT represented, as well as intended, that SBNA be the "Lender Loss Payee" for HTT's business personal property under the Policy. SBNA also argues that separate from its status as the Lender Loss Payee under the Policy, SBNA is the sole secured creditor with a perfected lien on and security interest in HTT's insurance proceeds. (Doc. 91.) Jazi Kat contends that it is entitled to the funds because, at the time of the fire loss, Jazi Kat was the first named loss payee under HTT's Policy and SBNA was not yet added as a loss payee. (Doc. 109-1.)

---

[4] First Fidelity Bank was deleted as a loss payee because a portion of SBNA's loan to HTT was used to fully payoff HTT's obligations to First Fidelity. (Doc. 91-2 at 18.)

## II. SUMMARY JUDGMENT STANDARD

When parties submit cross-motions for summary judgment, the Court must consider each motion on its own merits. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The Court will grant summary judgment when, viewing the facts in a light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of a case, and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict" for the other side. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In interpleader actions brought under 28 U.S.C. § 1335, federal district courts are "required to apply the substantive law that a court of the forum state would apply." *Equitable Life Assurance Soc. of U.S. v. McKay*, 837 F.2d 904, 905 (9th Cir. 1988). Accordingly, Arizona substantive law governs this interpleader action.

## III. ANALYSIS

SBNA contends that it is entitled to all of the disputed funds because it is the rightful "Lender Loss Payee under the Policy, and because SBNA is the only lender holding a perfected security interest in HTT's [business personal property] or the proceeds thereof, which includes the insurance proceeds [here]." (Doc. 91 at 2–3.) Jazi Kat concedes that SBNA is entitled to $300,000 of the disputed funds because of "SBNA subrogation." However, Jazi Kat contends that it is entitled to the remaining $479,999.96 because Jazi Kat was the first listed "loss payee" on the Policy, whereas SBNA was not named on the Policy at the time of the loss. (Doc. 109-1 at 2–3, 5.) For the following reasons, the Court finds that there is no genuine dispute as to any material fact and that SBNA is entitled to entirety of the disputed funds as a matter of law.

**A. SBNA has a first position perfected security interest in HTT's insurance proceeds.**

The Court first finds that there is no genuine dispute of fact that SBNA has a perfected first position security interest in all of HTT's assets, which includes insurance

- 5 -

proceeds. Jazi Kat admits that "SBNA has a security interest in the assets of [HTT]." (Doc. 109-2 at 3.) Under Arizona law, "[t]he attachment of a security interest in collateral gives the secured party the rights to proceeds." A.R.S. § 47-9203(F). Proceeds include "insurance payable by reason of . . . damages to the collateral." *Id.* § 47-9102 (A)(64)(e). "A security interest in proceeds is a perfected security interest if the security interest in the original collateral was perfected." *Id.* § 47-9315(C). And a security interest in collateral is perfected upon the filing of a financing statement. *Id.* § 47-9310(A).

Under Article Nine of Arizona's UCC, a security agreement "is effective according to its terms between the parties, against purchasers of the collateral and against creditors." *Id.* § 47-9201(A). "The effect of this section is to give the Article Nine secured party, upon a debtor's default, priority over 'anyone, anywhere, anyhow' except as otherwise provided by the remaining [UCC] priority rules." *See Valley Nat. Bank of Ariz. v. Cotton Growers Hail Ins., Inc.*, 747 P.2d 1225, 1228 (Ariz. Ct. App. 1987) (quoting *Griffin v. Continental Am. Life Ins. Co.*, 772 F.2d 671, 673 (11th Cir. 1984)).

Here, SBNA's perfected first position interest in HTT's collateral, including any insurance proceeds, is evidenced by SBNA's UCC financing statement, which SBNA filed with the Arizona Secretary of State's office. Jazi Kat neither disputes SBNA's perfected interest nor points to evidence demonstrating that Jazi Kat has a conflicting perfected security interest. Indeed, Jazi Kat proffers no evidence that it has a security interest at all or that it even is a creditor of HTT. Instead, Jazi Kat makes a bald claim that although SBNA has a security interest in HTT's assets, the disputed funds at issue here "are the asset of Jazi Kat, not HTT." (Doc. 109-2.) Not so. It is undisputed that the interpleaded funds represent the amount due under the Policy for the fire loss that occurred at HTT's business property in February 2021. It is further undisputed that the insured on the Policy is HTT. Jazi Kat's legally and factually unsupported claim that the insurance proceeds are not among HTT's assets is unpersuasive. *See Valley Nat. Bank*, 747 P.2d at 1228 (holding that insured's interest in the insurance proceeds at the time loss occurs is sufficient to allow bank's security interest to attach). Given that SBNA is an Article Nine secured party and

that HTT has defaulted on its loan in excess of the disputed funds at issue here, SBNA has priority over any other party to the insurance proceeds. Jazi Kat fails to point to a UCC priority rule that would preclude this result. Nor does Jazi Kat point to evidence establishing that its claim to the disputed funds is superior to SBNA's perfected security interest.

**B. SBNA is entitled to reformation of the Policy as a matter of law.**

Jazi Kat repeatedly emphasizes that at the time of the loss, Jazi Kat was listed as the first loss payee on the Policy, whereas SBNA was not listed on the Policy at all. (Doc. 109-1 at 2–4.) Jazi Kat points to the holding in *Zaghi v. State Farm General Insurance Co.* to assert that a creditor—like SBNA—that is not named in an insurance policy on the date of the loss cannot recover insurance proceeds under that policy. 77 F. Supp. 3d 974, 975 (N.D. Cal. 2015). Jazi Kat also points to *Zaghi* for the proposition that a creditor cannot retroactively add himself to the policy. *Id.*

Jazi Kat's argument and reliance on *Zaghi* is unpersuasive. In *Zaghi*, the court held that the creditor could not recover the insurance proceeds because the creditor failed to allege sufficient facts that the insurer *intended* to list the creditor on the Policy before the date of the loss. *Id.* In this case, it is undisputed that both Summit (the insurer) and HTT (the insured) intended for SBNA to be listed on the Policy back in October 2019. This is demonstrated by Summit both internally approving HTT's request to designate SBNA as the lender loss payee on the Policy and by Summit issuing a Certificate of Insurance in October 2019, listing SBNA as the certificate holder, additional insured, and lender loss payee on the Policy. It is also undisputed that but-for Summit's employee failing to process the policy change in October 2019, SBNA would have been listed on the Policy as the lender loss payee at the time of the fire loss. Jazi Kat even concedes that the reason SBNA was not listed on the Policy at the time of the loss was "due to the insurance company's administrative error." (Doc. 109-1 at 3.) The Court finds *Zaghi*'s facts distinguishable from the facts in this case and thus the reasoning is inapposite.

Moreover, as the court in *Zaghi* notes, reformation of an insurance contract is proper

where the insured and the insurer both intended for the creditor to be named in the insurance policy. *Id.*; *see also A. I. D. Ins. Servs. v. Riley*, 541 P.2d 595, 598 (Ariz. Ct. App. 1975) ("Where the party applying for insurance states the facts to the agent and relies on him to write the policy which will protect his interests, and the agent so understands, but fails by mistake to so write the contract, the mistake is considered mutual and the insured is entitled to reformation."). Given that Summit and HTT intended to name SBNA as the lender loss payee on the Policy in October 2019, SBNA is entitled to reformation of the Policy as a matter of law. *Home Owners' Loan Corp. v. Bank of Ariz.*, 94 P.2d 437, 442 (Ariz. 1939) ("[T]he equitable remedy of reformation will not only be allowed as against original parties and their heirs, but will also be granted as against the assignees, creditors, purchasers with notice, and all others standing in privy.") (internal quotation omitted).

**C. Any claim Jazi Kat has to the disputed funds is inferior to SBNA's claim.**

Jazi Kat contends that "[e]ven if the insurance policy is reformed, [it] is still the first loss payee, first in time, and therefore, superior to a later added loss payee." To support its "first in time, first in right" argument, Jazi Kat directs the Court's attention to three Supreme Court cases: *United States v. Equitable Life Assurance Society of U.S.*, 384 U.S. 323 (1966); *United States v. Pioneer American Insurance Co.*, 374 U.S. 84 (1963); and *United States v. City of New Britain, Conn.*, 347 U.S. 81 (1954). As Jazi Kat correctly notes, these cases hold that a federal tax lien is superior to other liens not choate at the time the federal tax lien is filed. Jazi Kat argues that although "first in time, first in right" doctrine originally arose in the tax-lien context, it has been extended to non-tax lien areas such as in *Connecticut-Mutual Life Insurance Co. v. Carter*. 446 F.2d 136, 138–39 (5th Cir. 1971) (holding that federal government's lien remained subordinate to private lien because "[government], operating as a private lender, voluntarily took a second mortgage fully aware . . . of the then existent attorneys' fees clause in the first mortgage.").

The Court is not persuaded. First, it is not clear how any of the cases Jazi Kat cites support its claim to the disputed funds. It is true that these cases refer to the principle of "first in time, first in right," but that doctrine was used in the context of *competing liens*.

Here, only SBNA has established a lien in HTT's assets and insurance proceeds; Jazi Kat, on the other hand, has proffered no evidence that it has a competing lien in HTT's assets or the insurance proceeds. Second, even assuming Jazi Kat has a competing lien, Jazi Kat has proffered no evidence that such a lien was perfected or that it was perfected *first in time*. A.R.S. § 47-9322(A)(2) ("A perfected security interest . . . has priority over a conflicting unperfected security interest."). To the contrary, the record demonstrates that SBNA not only has a perfected interest in HTT's insurance proceeds, but that SBNA perfected this interest first in time. Take, for example, the undisputed warranties HTT made to SBNA when it granted SBNA an interest in its assets. HTT warranted that it held good and marketable title to the collateral "*free and clear of all liens*" and that HTT had not granted any security interests affecting the collateral that would be prior or superior to SBNA's interest. Jazi Kat fails to rebut any of this. So even under the "first in time, first in right" doctrine for competing liens, SBNA is entitled to the funds.

Moreover, Arizona case law supports the finding that SBNA's interest as *lender loss payee* under the Policy is superior to Jazi's Kat's interest as *loss payee*. As Arizona courts have explained, a loss payee is defined as "a mere appointee to receive the proceeds to the extent of his interest . . . dependent upon the existence of an insurable interest in such appointee . . . [I]f the policy is not collectible by the insured, the appointee, likewise, cannot recover thereunder." *Valley Nat. Bank of Ariz. v. Ins. Co. of N. Am.*, 836 P.2d 425, 428 (Ariz. Ct. App. 1992) (quoting *Granite State Ins. Co. v. Emps. Mut. Ins. Co.*, 609 P.2d 90, 91–93 (Ariz. Ct. App. 1980)). In contrast, a lender loss payable clause "is, in effect, an independent agreement with the mortgagee, creating an independent contract between the [insurance] company and the mortgagee for the latter's benefit." *Id.* Consequently, "in a loss payee context, the loss payee's rights are derivative [of the insured's rights], while in a [lender loss payable] context, there is a separate contract between the insurer and mortgagee which is independent from the insurer-named insured relationship." *Id.* Here, Jazi Kat is the loss payee, whereas SBNA, as the mortgagee, is the lender loss payee. Any interest Jazi Kat has in the insurance proceeds is derivative of HTT's interest. Given the

default judgment against HTT and given SBNA's perfected security interest in HTT's insurance proceeds on its collateral, HTT has no right to collect the proceeds. In turn, because HTT cannot collect the insurance proceeds, Jazi Kat likewise cannot collect.

In sum, the Court finds that there is no issue of any material fact and that SBNA is entitled to the entirety of the disputed funds as a matter of law. A rational trier of fact, taking the record as a whole, could not find that Jazi Kat's claim to the disputed funds is superior to SBNA's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (holding that summary judgment may be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Accordingly, the Court grants SBNA's motion for summary judgment and denies Jazi Kat's motion. The Court also denies without prejudice SBNA's request for attorneys' fees because it does not comply with LRCiv 54.2.

**IT IS ORDERED** that SBNA's Motion for Summary Judgment (Doc. 91) is **GRANTED** and Jazi Kat's Cross Motion for Summary Judgment (Doc. 109-1) is **DENIED**. SBNA is hereby entitled to the entirety of the interpleaded funds amounting to $779,999.96, which Plaintiff deposited into the Court's Registry on April 10, 2023, and any accrued interest or any earned interest.

**IT IS FURTHER ORDERED** that SBNA's request for attorneys' fees is denied without prejudice. If SBNA so chooses, it may move for attorneys' fees and costs in a manner that complies with LRCiv 54.2.

**IT IS FURTHER ORDERED** that the Clerk of the Court is directed to terminate the case.

Dated this 17th day of November, 2023.

Douglas L. Rayes
United States District Judge